# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COOKEVILLE DIVISION

AURELIO GARCIA SANCHEZ )
#524276, )
                   )
      **Petitioner,** )
                   )     NO.  2:19-cv-00061
v. )
                   )
WARDEN SHAWN PHILLIPS, )
                   )
      **Respondent** )

## MEMORANDUM OPINION

The *pro se* Petitioner is a state inmate challenging an effective 125-year sentence for five counts of rape of a child. (Doc. No. 1 at 1.)  He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.)  The Court will deny his petition for the reasons set forth below.

## I.       BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2013, a Macon County jury convicted Petitioner of five counts of rape of a child. (Doc. No. 16-1 at 78–82.)  The trial court sentenced Petitioner to 25 years in prison for each count. (Id.)  It ordered the 25-year sentences to run consecutively to each other for an effective total sentence of 125 years. (Id.)

The Tennessee Court of Criminal Appeals affirmed Petitioner's convictions and sentences on direct appeal (Doc. No. 16-11), and the Tennessee Supreme Court denied discretionary review on April 7, 2016. (Doc. No. 16-15.)  Petitioner filed a pro se state post-conviction petition on August 10, 2016. (Doc. No. 16-16 at 11–33.)  The trial court held a hearing on the petition on September 1, 2017, and denied relief in a written order entered October 13, 2017. (Doc. No. 16-16 at 3–10.)  The Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief (Doc. No. 16-21), and the Tennessee Supreme Court again denied discretionary review on

July 17, 2019. (Doc. No. 16-23.)

Petitioner placed the instant petition in the prison mail system on or before July 30, 2019 (Doc. No. 1 at 13–14), and Respondent acknowledges that it is timely. (Doc. No. 17 at 2.)

## II.     STATEMENT OF FACTS

The Court relies on the summary of evidence at trial produced by the Tennessee Court of Criminal Appeals. (See Doc. No. 16-11 at 6–9.)  According to that summary, the victim, B.S., testified at trial that she was at that time 14-and-a-half years old and in the ninth grade.  She said that her brother was born in December 2010 and was 3 years old.  B.S. testified that after her brother was born, she lived with her mother, brother, and Petitioner.  Her mother went back to work in early 2011, and Petitioner stayed home with B.S. while her mother was at work.

B.S. testified that while her mother was at work, Petitioner "touched her thighs and 'messed with' her, causing her to feel uncomfortable." (Doc. No. 16-11 at 6.)  The Tennessee Court of Criminal Appeals summarized the specific behavior about which B.S. testified:

> She testified that the Defendant took her clothes off and touched her vagina with his fingers and his tongue. He also touched her breasts with his tongue. She stated that this happened "a lot," estimating over twenty times.
>
> B.S. testified that, on one occasion, in the living room of their residence, the Defendant touched her legs, took off her clothes, put his tongue on her vagina and "spread my vagina apart" with his fingers. B.S. testified that this happened "over thirty" times in the living room. She testified that, on one occasion in her mother's room, the Defendant took her clothes off and put his tongue on her vagina. The Defendant kept his clothes on. On another occasion in her mother's room, the Defendant took off his clothes except for his boxer shorts. Again, the Defendant took off B.S.'s clothes and put his tongue on her vagina. He also used his fingers to spread apart her vagina. B.S. recounted that these events happened in her bedroom "about twice" and in the living room and her mother's room "a lot." She estimated that it happened over thirty times in the living room and over thirty times in the bedroom. B.S. testified that on one occasion in the living room, the Defendant kissed her, took her clothes off and put his tongue on her vagina.

(Id.) B.S. testified that Petitioner never had difficulty understanding her, although she spoke only English.

On cross-examination, B.S. acknowledged that Petitioner asked her to do chores and encouraged her to do her homework and that she had arguments with him when she did not clean the house before he came home. She also testified that she told a friend about Petitioner's touching her in August 2011; "[s]he said she wanted to tell someone because it did not feel right to her." (Id. at 7.)

The victim's mother testified that she was married to Petitioner and had a son with him, that Petitioner was 35 and had lived with her for four or five years. She accompanied Petitioner when he was interviewed by Sheriff's deputies and did not return home after the interview but spoke to Petitioner by telephone 3 days later. "During their phone conversation, [Petitioner] admitted that he 'touched' and 'licked' B.S. but denied having had sex with B.S." (Id.) The mother testified that while she was later packing Petitioner's belongings, she found a pair of his underwear and B.S.'s underwear tied together in a pocket of his coat in a laundry basket. (Id.)

The victim's mother acknowledged on cross-examination that she did not know how the underwear got into the laundry basket and was assuming that Petitioner was involved in placing it there. She was still married to Petitioner and had known him for at least four years before they were married. She said that B.S. and Petitioner got along "all right" and that Petitioner encouraged B.S. to do her homework and chores. She said B.S. and Petitioner sometimes disagreed but that she had never seen Petitioner behave inappropriately with B.S. (Id.)

Macon County Sheriff's Office Chief Terry Tuck testified that he was involved in an interview of Petitioner that lasted approximately 45 minutes. The interview was in English, and Tuck never considered getting an interpreter because Petitioner appeared to understand and

respond appropriately. In a statement written by Tuck and signed by Petitioner, Petitioner reported having been molested as a child himself and admitted having sexual contact with B.S. Tuck read the statement at trial:

> About two months ago I was at home with my kids. My wife left for work about 9:45 p.m.... A lot of times I would already be asleep and I would wake up during the night and [B.S.], my step daughter, would be up watching television. [B.S.] was supposed to be in bed, and when I would get up, I would catch her watching television. I told her she was supposed to be in bed, and she would come up close to me trying to sweet talk me into letting her stay up. There were about five occasions that this happened, and I let myself get carried away with [B.S.]. I would stroke her hair. And on these five occasions I pulled her pajama bottoms down and would lick her vaginal area. I'm sorry that this happened and I let myself go too far with [B.S.]. Ever since this started, this has been bothering me and I'm glad it's over and I'm sorry that this happened.

(Doc. No. 16-11 at 8.)

Tuck agreed on cross-examination that the written statement was not Petitioner's exact words and that the interview was not recorded despite the availability of technology to do so. He also agreed that Petitioner had initially denied any sexual contact with B.S. and that Tuck had repeatedly told Petitioner he was not telling the truth, but he denied that anyone yelled at or touched Petitioner during the interview. (Id.)

Gallatin Police Department Sergeant Pete Ritchie testified that he was present during the interview when Petitioner was advised of his Miranda rights and signed a waiver form. Ritchie testified he was present when Petitioner admitted having had sexual contact with B.S. He said the interview was "professional and respectful" and that Petitioner was "treated fairly." (Id. at 8–9.)

Petitioner testified that he was born in Mexico and lived there until he was 16 when he moved to the United States with "very little" understanding of English. He had worked in tobacco farming in Kentucky for three months before moving to Tennessee. He was working as a bricklayer at the time he married his third wife, the victim's mother. Petitioner testified that he

had a good relationship with B.S. at first, but they later fought and argued frequently, and things got worse between them after his son was born. He testified that he and the victim argued about her joining the cheerleading squad and wanting a boyfriend shortly before the victim accused him. He denied the accusations and said they were "made out of 'hate.'" (Id. at 9.)

Petitioner testified that he had trouble understanding the questions of the investigators who interviewed him, that they never read him his Miranda rights, and that he did not sign anything during the interview, including the waiver form. He said that one of the investigators got angry and lunged at him, and that he felt threatened and cried during the interview. He testified that he told investigators that he had been abused by his cousin five times, but they misinterpreted his statement to be that he had abused B.S. five times. (Id.)

Petitioner testified on cross-examination that he did not learn of the victim's allegations until the day after his interview. He said that his wife, the victim, and law enforcement had fabricated statements against him. (Id. at 9.)

## III.    ISSUES PRESENTED FOR REVIEW

Petitioner asserts two claims for relief:

1. There is insufficient evidence to support his convictions for rape of a child. (Doc. No. 1 at 5–6; Doc. No. 2 at 6–8.)

2. Trial counsel was ineffective for (a) failing to present mitigating evidence during sentencing, and (b) failing to seek a bill of particulars and to seek an election of offenses at the close of the prosecution's case. (Doc. No. 1 at 7–8; Doc. No. 2 at 9–21.)

## IV.    STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Peterson v. Warren, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" Woodford v. Garceau, 538 U.S. 202, 206 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." Uttecht v. Brown, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams, 529 U.S. at 410).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. Id. at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. Id. at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); but see McMullan v. Booker, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and reading Matthews to not take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show

that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner carries the burden of proof. Pinholster, 563 U.S. at 181.

## V.     ANALYSIS AND DISCUSSION

A.     CLAIM 1 – SUFFICIENCY OF THE EVIDENCE

Petitioner asserts that the evidence at trial does not establish the essential elements required to support a conviction for rape of a child because there was no evidence of penetration. (Doc. No. 1 at 5–6.) He exhausted this claim on direct appeal, and the Tennessee Court of Criminal Appeals rejected it on the merits:

> Next, the Defendant contends that the evidence presented at trial is insufficient to sustain his five convictions for rape of a child because the State failed to prove the element of penetration. . . . He further contends that "the verdict of the jury is inconsistent with the law and evidence" and is "contrary to the weight of the evidence," and that, "as a matter of law, there was reasonable doubt" as to his guilt. The State responds that the evidence was that the Defendant licked the victim's vagina was sufficient to prove the penetration element. . . . Finally, the State responds that the jury weighed the evidence and found it to be sufficient to support guilty convictions for five counts of rape of a child. The State contends that the evidence presented at trial was sufficient for a rational juror to conclude beyond a reasonable doubt that the Defendant committed the five acts of rape of a child. We agree with the State.

> When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e), State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to

findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1996) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction for rape of a child requires "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522 (a) (2014). Tennessee Code Annotated section 39-13-501(6) and (7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion,

however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body . . . ." and sexual contact as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts . . . ." There is sexual penetration, in a legal sense, if there is the "slightest penetration" of a female's sexual organ. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001). This includes the "outer folds" of the vagina. Id.

. . .

The evidence presented and viewed in the light most favorable to the State was that B.S. was home alone with the Defendant and he took her clothes off in the living room of their residence and touched B.S.'s legs, took off her clothes, put his tongue on her vagina and "spread [her] vagina apart" with his fingers. He also touched her breasts with his tongue. B.S. testified that this happened at least thirty times in the living room. She also testified that these same acts, including the Defendant licking her vagina, occurred in her mother's room on multiple occasions. B.S. testified that on another occasion, the Defendant took off all his clothes except his boxers and took off B.S.'s clothes. The Defendant put his tongue on B.S.'s vagina and used his fingers to spread apart her vagina. The Defendant admitted in a telephone conversation with Ms. Knight, B.S.'s mother, that he had licked her vagina and touched her vagina. The Defendant admitted to law enforcement that these sexual acts occurred five times. This evidence is sufficient for a jury to conclude that the Defendant sexually penetrated B.S., as legally defined, by penetrating her vagina with his tongue, and thus was guilty of the offense of rape of a child. Because we have held that the evidence presented was sufficient from which a jury could conclude that the Defendant was guilty of five counts of rape of a child, we hold that the jury's verdict is not contrary to the law and evidence presented at trial. The Defendant is not entitled to relief on these issues.

(Doc. No. 16-11 at 12–16.)

Petitioner acknowledges that Jackson provides the applicable federal standard for this claim but argues that the state court's determination is unreasonable. (Doc. No. 1 at 6; Doc. No. 2 at 7–8.)  Respondent reiterates the state court's bases for its determination and concludes that it is not objectively unreasonable. (Doc. No. 17 at 18–20.)

Analysis of an exhausted insufficient-evidence claim in the habeas context is doubly deferential: "First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." Tucker v. Palmer, 541 F.3d 652, 656 (6th Cir. 2008).  This review imposes a "standard . . . so demanding that '[a] defendant who challenges the sufficiency of the

evidence to sustain his conviction faces a nearly insurmountable hurdle.'" Davis v. Lafler, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (quoting United States v. Oros, 578 F.3d 703, 710 (7th Cir. 2009)). Jurors have "broad discretion in deciding what inferences to draw from the evidence," and when there are "a number of plausible ways to interpret the record," the state court's interpretation must not be disturbed by a habeas court as long as it is among those plausible interpretations. Coleman v. Johnson, 566 U.S. 650, 655 (2012) (per curiam); Renico v. Lett, 559 U.S. 766, 778 (2010). The Supreme Court has explained how constrained a federal habeas court's review in these circumstances is:

> The opinion of the Court in Jackson v. Virginia, 443 U.S. 307 (1979), makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam). A federal court must not find a state court's ruling unreasonable unless it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. at 103.

Accordingly, a federal court reviewing the sufficiency of the evidence on habeas review may not re-weigh evidence. Marshall v. Lonberger, 459 U.S. 422, 434, (1983). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wright v. West, 505 U.S. 277, 296–

97 (1992).

In this case, when the evidence is viewed in the light most favorable to the state, penetration of the victim's vagina by Petitioner's tongue was among the "plausible ways" the jury could interpret her testimony, and the state court's conclusion to that effect was not so clearly wrong that it is beyond "fairminded disagreement." Petitioner disagrees with that conclusion, but he does not cite any federal law establishing that it is unreasonable.

Moreover, Petitioner's argument that the victim's trial testimony was limited to his placing his tongue "on" her vagina, "not placing anything in" it (see Doc. No. 2 at 7), is simply not material to whether the elements of rape of a child were met under Tennessee law. As the Tennessee Court of Criminal Appeals explained in Petitioner's case, state law defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body." Tenn. Code Ann. § 39-13-501. That court has explained in other cases that "'[c]unnilingus' means a sex act accomplished by 'placing the mouth or tongue on or in the vagina of another,'" and that "[p]enetration of the vagina by the mouth or tongue is not required for a sexual act to constitute cunnilingus." State v. Bardin, No. W201702506CCAR3CD, 2019 WL 458917, at *3 (Tenn. Crim. App. Feb. 5, 2019), appeal dismissed (Tenn. June 11, 2019) (quoting State v. Hoyt, 928 S.W.2d 935, 942 (Tenn. Crim. App. 1995) and citing State v. Vanderbilt, 1992 WL 69659, at *3 (Tenn. Crim App. Apr. 8, 1992)). Accordingly, "penetration is not required for cunnilingus to constitute rape. Because the statutory definition of 'sexual penetration' includes cunnilingus, a defendant can be guilty of rape whether or not the defendant penetrates the victim's vagina during cunnilingus." Id. (holding that testimony that defendant licked victim's vagina several times was sufficient to support conviction for rape).

Petitioner is not entitled to relief on this claim.

B.      CLAIM 2 – INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts that his trial counsel was ineffective at sentencing and in failing to seek a bill of particulars or an earlier election of offenses from the prosecution. (Doc. No. 1 at 8; Doc. No. 2 at 12-21.)  He raised those claims in his state post-conviction proceedings and exhausted them on post-conviction appeal. (See Doc. No. 16-21.)

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of Strickland v. Washington, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687.  To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. at 688–89.  The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  Prejudice, under Strickland, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The Tennessee Court of Criminal Appeals properly identified Strickland as the source of the standard for Petitioner's ineffective-assistance claims. (Doc. No. 16-21 at 11–12.)  It

summarized the relevant testimony by counsel at the post-conviction hearing and addressed the merits of Petitioner's claims. Although Petitioner asserts his various ineffective-assistance claims together, and that is how the state court addressed them, this Court will separate them for clarity.

The Tennessee Court of Criminal Appeals provided the following summary and analysis of Petitioner's claim that counsel was ineffective at sentencing:

> [Trial counsel testified that] [a]t sentencing, the trial court was "pretty much locked in" to sentencing the Petitioner to twenty-five years for each conviction, and the only issue was whether the Petitioner would serve the sentences concurrently or consecutively. Trial counsel said that the trial judge in this case "typically sentenced consecutive" in sexual abuse cases and that he did not have any hope for concurrent sentencing. [FN4: The judge at trial and sentencing did not preside over the Petitioner's post-conviction case.] Trial counsel did not have any witnesses testify about the Petitioner's work history or background at the sentencing hearing. However, the Petitioner had testified about his background at trial, and some of the information was in his presentence report. Trial counsel acknowledged that he did not argue any mitigating factors.
>
> . . .
>
> Trial counsel acknowledged that the only mitigating factor he could have argued at sentencing was factor (1), that the Petitioner's conduct neither caused nor threatened serious bodily injury.
>
> . . .
>
> Finally, as to trial counsel's failure to present mitigating proof at sentencing, the post-conviction court noted that the trial court stated at sentencing that it had considered all of the enhancement and mitigating factors. Thus, the post-conviction court found that trial counsel's failure to argue mitigating factors was not deficient performance and did not prejudice the Petitioner.
>
> . . .
>
> Regarding the Petitioner's claim that trial counsel was deficient for failing to present mitigating evidence at sentencing, the presentence report stated that the victim received nine months of counseling after the abuse. In addressing whether the Petitioner's sentences should be served concurrently or consecutively, the trial court said,
>
>> Crimes against our children are among the most horrendous in our society, because if we don't protect our children, we will have no society. And our legislature has made very, very clear that if you have multiple convictions for child sex offenses such as rape of a child then consecutive sentencing is proper.
>>
>> I'm sure the parties in this courtroom are aware, I've handled these

cases before. I've done consecutive sentencing before and it has been upheld by the Court of Appeals and the Supreme Court before when I've done this type of sentencing.

The trial court then addressed whether consecutive sentencing was proper in the Petitioner's case. The trial court stated that it had reviewed all thirteen mitigating factors in Tennessee Code Annotated section 40-35-113, the court's notes from the trial, and the "history and presentence report" and that "this Court finds no mitigating factors in this particular instance."

The trial court addressed consecutive sentencing pursuant to Tennessee Code Annotated section 40-35-115(b)(5), which provides [that a court may order sentences to run consecutively if it finds by a preponderance of evidence that],

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

The trial court found that the time span of the abuse, the Petitioner's relationship to the victim, and the "mental damage" to the victim justified consecutive sentencing. On direct appeal of his convictions, this court upheld the trial court decision to order consecutive sentencing pursuant to Tennessee Code Annotated section 40-35-115(b)(5). Aurelio Garcia Sanchez, No. M2014-01997-CCA-R3-CD, slip op. at *16.

At the evidentiary hearing, post-conviction counsel suggested that trial counsel was deficient for failing to argue that mitigating factor (1), that the defendant's criminal conduct neither caused nor threatened serious bodily injury, applied in this case. See Tenn. Code Ann. § 40-35-113(1). However, the trial court stated that it had reviewed and rejected all thirteen mitigating factors. We note that this court has upheld a trial court's rejection of mitigating factor (1) when the defendant sexually abused minors. See State v. McKnight, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994); State v. John Ray Thompson, Nos. M2003-00487-CCA-R3-CD & M2003-01824-CCA-R3-CD, 2004 WL 2964704, at *19-20 (Tenn. Crim. App. at Nashville, Dec. 20, 2004) (stating that "every rape is physically and mentally injurious to the victim" and that "'[i]t is difficult to conceive of any factual situation where the rape of a child would not threaten serious bodily injury'") (quoting State v. Edward Earl Huddleston, No. 02C01-9706-CC-00228, 1998 WL 67684, at *3 (Tenn. Crim. App. Feb. 20, 1998)). On appeal, the Petitioner does not explain what other mitigating evidence trial counsel could have presented at sentencing that would have resulted in the trial court's ordering the Petitioner to serve his five twenty-five-year sentences concurrently. Thus, we conclude that the Petitioner has failed to demonstrate that trial counsel was deficient or that he was prejudiced by any deficiency.

(Doc. No. 16-21 at 9–16.)

The state court thus found that the sentencing judge had rejected the statutory mitigation factor of no-serious-bodily-injury despite the lack of argument on that point. Petitioner now asserts that counsel should also have argued that mitigation was appropriate due to Petitioner's work history and the victim's own recommendation of a 20-year sentence in her victim impact statement.[1] (Doc. No. 2 at 12.) But the state court's analysis establishes that the sentencing court heavily weighed the "horrendous" nature of crimes against children, as well as the time span of the abuse, Petitioner's relationship to the victim, and the mental injury to the victim. The sentencing court was also very troubled by Petitioner's lack of remorse expressed in his version of events reflected in the presentence report:

> I've been in this business for over thirty years, and never in my career have I been so disappointed about a Defendant's version as I have in this particular case. The Defendant's version starts out by saying that in this situation, I am the victim. I cannot put into words, tactful words, how such a statement makes this Court feel.
>
> It goes on in Defendant's statement saying how everyone in this particular case is to blame other than himself. This Defendant has shown absolutely no remorse for what he has done to this child and what he has done to society. Therefore, there is no question in this particular case that consecutive sentencing is appropriate.

(Doc. No. 16-7 at 16–17.) Petitioner's work history, already in evidence from his testimony, obviously did not outweigh those factors in the state court's judgment. Likewise, the state court was clearly not persuaded by the victim's sentencing recommendation in her victim impact

---

[1] The Court finds no reference to this latter argument in the state court's records, but Respondent does not assert that it is procedurally defaulted. Regardless of the possible default, the Court finds it most straightforward to address the merits of the claim rather than inquire whether Petitioner can establish cause and prejudice to excuse any default. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Hudson v. Jones, 351 F.3d 212, 216 (6th Cir. 2003) (proceeding directly to merits analysis because "the question of procedural default presents a complicated question . . . and is unnecessary to our disposition of the case"); Forensic v. Birkett, 451 F. Supp. 2d 874, 887 (E.D. Mich. 2006) (performing de novo review of unexhausted habeas claim because "it is easier to address the merits of Petitioner's claim than to perform a procedural default analysis").

statement, which was included in the presentence report the sentencing court reviewed. (Doc. No. 16-7 at 6.)

Based on this record, Petitioner cannot establish any likelihood that the sentencing court would have been persuaded to impose a shorter sentence if counsel had raised any of the arguments Petitioner proposes. The state court's determination that Petitioner was not prejudiced by counsel's performance at sentencing is, therefore, reasonable, and this Court need not address whether counsel's performance was deficient. See Smith v. Mitchell, 348 F.3d 177, 199–200 (6th Cir. 2003) ("[T]he court deciding an ineffective assistance claim need not . . . even address both prongs if the defendant fails to establish one.").

On the issue of whether counsel was ineffective for failing to seek a bill of particulars or an earlier election of offenses, the Tennessee Court of Criminal Appeals found as follows:

> Trial counsel acknowledged that the victim's testimony about the abuse and when it occurred was not specific and that he did not seek an election of offenses after the State's proof. He also did not file a motion for a bill of particulars before trial. The State provided him with discovery materials, though, including B.S.'s video-recorded interview. Trial counsel stated, "[S]o I sort of knew what she was going to say. And that's kind of the nature of these sexual offenses." . . .
>
> On cross-examination, trial counsel testified that he talked with the State before trial. Therefore, he knew what the State's evidence was going to be at trial. Trial counsel said that he had been practicing law almost thirty-eight years and that he had never filed a motion for a bill of particulars. He explained,
>
>> Usually, discovery is specific enough. And like I told [post-conviction counsel] a minute ago, you know, that's kind of the nature of these sexual offenses. Usually the indictment says a date to date, you know. If there's some law out there I can learn, I'm always willing to learn, but I just don't know it right now.
>
> Trial counsel also did not know a strategic reason for requesting an election of offenses at the close of the State's proof as opposed to the close of the case itself.
>
> . . .
>
> As to trial counsel's failure to file a motion for a bill of particulars, the post-conviction court accredited trial counsel's testimony that he knew from the State's discovery materials and the victim's video-recorded interview what the victim was going to say at trial. Thus, the court found that the Petitioner failed to demonstrate

deficient performance or prejudice. Regarding trial counsel's failure to request an election of offenses, the post-conviction court stated that this court addressed the issue in the Petitioner's direct appeal of his convictions and that this court ruled in favor of the State. Therefore, the post-conviction court refused to revisit the issue.

. . .

Petitioner claims that trial counsel was ineffective because he failed to file a motion for a bill of particulars. Tennessee Rule of Criminal Procedure 7(c) provides, "On a defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." There are three purposes for a bill of particulars: (1) to provide the defendant with information about the details of the charge if necessary for the preparation of the defense; (2) to avoid prejudicial surprise at trial; and (3) to enable the defendant to preserve a claim of double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). The Advisory Commission Comments to Tennessee Rule of Criminal Procedure 7(c) state that the purpose of the bill of particulars is to enable the defendant to know "precisely what he or she is charged with" and "is not meant to be used for purposes of broad discovery." If the needed information is in the indictment or has been provided by the State in some other satisfactory form, no bill of particulars is required. State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984) (citing 1 C. Wright, Federal Practice and Procedure, Criminal, § 129 (1982)).

Here, trial counsel testified that he talked with the State and received discovery materials, including the victim's video-recorded interview, before trial; therefore, he knew what the State's evidence was going to be and what the victim was going to say at trial. The Petitioner has offered no explanation as to how trial counsel's failure to file a motion for a bill of particulars impaired his defense. Therefore, he has failed to demonstrate that he is entitled to relief.

In a related argument, the Petitioner claims that trial counsel was ineffective because he failed to request an election of offenses from the State after the State's proof. However, as noted by the post-conviction court, this court addressed the issue of election of offenses in its analysis of the sufficiency of the Petitioner's convictions on direct appeal, stating:

> During closing argument, the State made the following election of offenses:
>
> > Count 1: "in the living room, ... [the Defendant] took off [B.S.'s] clothes, spread her vagina with his fingers and he licked her vagina."
> >
> > Count 2: "is also in the living room. The same [acts], [the Defendant] removes [B.S.'s] clothes, spreads her vagina and licks her vagina."
> >
> > Count 3: "is in her mom's bedroom, [the Defendant's] bedroom. [B.S.] testifies that he removes her clothes ... spreads her vagina, licks her vagina."

Count 4: "this time [the Defendant is] in his boxers, removes all his other clothes. [B.S.] testified to that, spread her vagina, licked her vagina."

Count 5: "is the time that he kissed her.... It was in the living room, removed her clothes, spread her vagina, licked her vagina."

As to the Defendant's argument that the victim never testified about the specific dates when the offenses took place, we agree with the State that its election of offenses provided the Defendant with sufficient notice about the specific sexual acts for which he was prosecuted. "This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999) (citations omitted). Because of the difficulty faced by young victims of sexual abuse when testifying, this Court has adopted the policy that "[a]ny description that will identify the prosecuted offense for the jury is sufficient." Id. at 392 (citing State v. Shelton, 851 S.W.2d 134, 138 (Tenn. 1993)). In the present case, the victim testified that the offenses occurred around the time her brother was born in December 2010 and during the time when her mother went back to work, following her maternity leave, in the beginning of 2011. The victim made her accusations against the Defendant in August 2011.

Aurelio Garcia Sanchez, No. M2014-01997-CCA-R3-CD, slip op. at *14-15.

The Petitioner, referring to this court's opinion, contends that "the timing of the election was key" and that the State's election during its closing argument was "too late" for him to respond to the election. He claims that if the State had made its election of offenses before he presented his defense, then he "could have addressed the specific instances upon which the State was relying." However, as noted by the State, the Petitioner makes no argument as to how he would have responded to the proof for each count so as to have changed the jury's verdict. Accordingly, we must conclude that the Petitioner has failed to demonstrate that trial counsel was deficient for failing to request an election of offenses at the close of the State's proof or that he was prejudiced by any deficiency.

 (Doc. No. 16-21 at 9–14.)

Petitioner asserts that this determination was contrary to, or an unreasonable application of

Strickland (Doc. No. 1 at 8), but he does not carry his heavy burden of proving that claim.  He

argues that a "bill of particulars would have been very helpful," and that the state's election of

offenses during closing argument was "vastly inadequate for the defense to respond" because

evidence was closed at that point. (Doc. No. 2 at 15, 17.) But he does not propose any proof that might have persuaded the jury and that he would have offered at trial if he had obtained a bill of particulars or an earlier election of offenses. Counsel testified that he knew from discovery what the state's evidence would be, and Petitioner's testimony at trial was that he had never engaged in the alleged conduct with the victim, regardless of when or where it was alleged to have happened. Petitioner has simply not demonstrated what the defense would have done differently in response to earlier specifics about the particular offenses to be decided by the jury.

Petitioner also suggests that jury deliberations might have been affected by not having an election of offenses in time for them to be included in the jury instructions.[2] (Doc. No. 2 at 20.) But aside from his own vague speculation, Petitioner offers no support for his theory that the jury was confused about the charged offenses. Moreover, as this Court concludes above, the state courts reasonably determined that there was sufficient evidence to support each conviction the jury returned.

Plaintiff has not established any reasonable probability that the outcome of his trial would have changed if counsel had sought a bill of particulars or an earlier election, and thus fails to establish the prejudice required to succeed on a Strickland claim. The state court's determination on that point was reasonable, which obviates the need for any review of the adequacy of counsel's performance. See Smith, 348 F.3d at 199–200.

Petitioner is not entitled to relief on either of his sub-claims of ineffective assistance of trial counsel.

---

[2] Again, Respondent does not raise a default defense to this theory, which was not addressed by the Tennessee Court of Criminal Appeals, or address it in any way.

# VII. CONCLUSION

Both of Petitioner's claims fail on their merits for the reasons set forth above. Accordingly, the Court will deny the requested relief and dismiss the petition.

An appropriate Order will enter.

_____

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE